May it please the Court. My name is Denise DeFranco. I'm here representing Mrs. Elipidia Braza in her quest for a survival annuity benefit. Mrs. Braza is statutorily entitled to a survivor annuity because she and her now-deceased husband never waived her right to that annuity. But she signed a document to that effect. Did she not? Yes, she did. The document that Mrs. Braza signed was a consent form, and it did not evidence a waiver of her statutory right. Why not? It doesn't because a waiver requires an intentional relinquishment of a known right. The Supreme Court has said that. Well, didn't the form tell her what the right was? Your Honor, I do not believe that the form told her what the right was. And why didn't it tell her what the right was? I think that there are two things that are missing from the form. Number one is an express statement that she had an independent entitlement to a statutory annuity, a survivor annuity, and that if she consented on that form, that she would be giving up that right. If I may, I would like to direct your attention to a comparison between the form that Mrs. Braza signed compared to the form that Mr. Braza signed. But those are the standard forms. And I didn't see anywhere that there's been any objection that these forms are unclear or confusing or that more should be done. Are you saying that she was induced fraudulently to sign or that just she didn't know what she was signing? Your Honor, we are not arguing that she was fraudulently induced to sign the form, and we are arguing that the form did not indicate that she waived her right as required by the statute. And that is because a waiver requires knowledge of what she's giving up and an understanding of what she's giving up. How much knowledge does she need? Does she need to know the exact dollar amount of what her survivor annuity would look like? Does she need to have some information about how soon her husband will die on her? I mean, what kind of knowledge does she need to have? I think to waive a statutory right to an annuity, number one, she had to know she had such a right. She can't waive it if she's not aware of it. She has to have knowledge of that right. Does the record indicate she did not have knowledge? That's right. There's an express finding by Administrative Judge Gook in this case that has not been challenged by the government that Mrs. Brazett did not have knowledge of her statutory right, and she would never have signed the form if she knew that she were giving up her entitlement to a survivor annuity if she had signed the form. It can't be in a case-by-case basis. I mean, that just is impossible. The OPM certainly can craft a form advising people what the rights are, and when you sign the form, it's a waiver, and too bad if you didn't understand what was plainly in the back and black and white in the front. So what's the matter with the form? It does say under general information that there is an annuity unless the current spouse consents. Your Honor, I submit to you that it suggests that the retiring employee has the right or the power to give her annuity or not. If you compare the form that he signed, that Mr. Brazett signed, two pages later on page 183 in the record, that form and page 183 in the record, the form that Mr. Brazett signed affirmatively stated, and I'm quoting, this is under the heading Section D, Annuity Election. In the right-hand column of that paragraph in the middle of the page, it says, The law provides an annuity with full survivor benefits for your spouse. Mr. Brazett is informed of her statutory right to an annuity. She is not. You will not find similar language to that on the form that she signed. The second thing that's on this form. Well, she says on her form, I freely consent to the survivor annuity election described in Part 1. Why isn't that, what could that refer to other than the survivor annuity? The three choices that are on this form are choices that reduce her, either eliminate her right to a survivor annuity or diminish it. One of the choices on this form is not a full survivor annuity. She has, there's nothing on this form that suggests to her that if she doesn't sign, she will get what she's entitled to under the statute. If OPM had a form for her similar to the one you described, you talk about A183, the form that he signed, and she had signed this, would you be prepared to agree that that's enough, that she doesn't need to, she can't later disclaim the form if the form is clearer? In other words, is your case tied to the form? It is. This case, Mrs. Braza's case, is tied to the form and the facts as found by Administrative Judge Cook and not challenged by the government. Even outside of the context of Mrs. Braza, though, and Administrative Judge Cook's finding, if a form were adopted, and I'll note for the record that, and this is not in the record, but that OPM has revised its form to make it more clear what is giving, what a spouse is giving up if it signs a form. Okay, that's my question. If OPM made a bulletproof form, would that solve the problem even in the case of a surviving spouse who didn't understand what the form may have meant? It certainly would make it a lot harder for a claimant to satisfy their burden. If the claimant came forward and said, I didn't understand the form, and the OPM had a more clear form that said, you have a right to a survivor annuity, if you sign this form, you are giving it up, then the claimant will have a lot harder time establishing their burden of proof by a preponderance that they were not. Even on the facts of this case where the Administrative Judge said she didn't know. How would this case come out with a good form? Yeah, that's the question. Given your facts, which presumably you started out by telling us undisputed facts, she didn't understand what she had and she didn't understand what the form did to her, are you now saying, oh, if the form were only better, she'd have no case? Well, I think if another claimant had signed a good form and the government never... If your claimant had signed a good form is the question. If my claimant had signed a good form... Yes, where would you be? It depends whether or not I have the Administrative Judge's fact findings that are unchallenged in my back pocket. If I do... Same findings. Same findings. She didn't understand it. Same findings, unchallenged by the government, she should be entitled to a survivor annuity. That's a hard row to hoe. You've got a real problem with that, aren't you? I submit to you, Your Honor, that the government has not established that the Administrative Judge's findings are not supported by substantial evidence. That is your standard of review on fact findings that have been made by the MSPB. Administrative Judge Cook made fact findings. The government hasn't challenged... I understand, but the findings are, if the form is a good form and clearly advises a survivor, it strikes me that under our precedent that's the end of the matter. You can't look behind it and say, well, she signed the form, she read English, she understood English, but she didn't understand the form. You can't do that. It seems to me that it boils down to the question of whether the form is an adequate form. I don't understand why you didn't tell us what the new form was. It's not a record question. It's a matter of public notice, what the new form is. What does the new form say that this form doesn't say? The new form says, above where Mrs. Braza signs, I will not receive a survivor annuity. I understand that if my selects elects no regular or insurable survivor interest after Mrs. Braza dies, I will not receive a survivor annuity. That is not on the current form. I submit to you that there are two things. From the point of view of whether the form is adequate, do you agree that the new form is adequate? Actually, I don't think it's adequate. I think it's because the new form also does not say that she has a statutory right to a survivor annuity. I think that the form needs to say two things. I'm sorry, Your Honor. Go ahead. I think that the form, to be adequate, needs to say two things. I actually crafted up what I think would be a form that would be virtually insurmountable by a claimant, except in the most extreme circumstances. And they would say, you, this is directed to instructions, clear instructions, like were found in the Braza, excuse me, the Collins case. The Collins case, the court found the form gave the signator unmistakable notice. And in that case, there were clear, specific instructions to the signator. The instructions in this case could say, to be adequate, you are entitled to a survivor annuity if your spouse dies. You are entitled to a survivor annuity in the amount of 55% of your spouse's annuity. If you check this box, you are agreeing to give up that right. If you check this box, you are agreeing to reduce the amount that you're entitled to. Mr. Franco, what would you say if the notary testified that they came in, he put the form in front of her, and I heard him say, you've never seen this form before, but don't worry about it, just sign it. And she signs it, and the notary notarizes it. This is the form I just hypothesized? This is the new, elaborate, good form, discloses everything, attaches as an appendix to the form all of the relevant statutes, and some of the relevant cases. But the evidence is she never read the form. What's your position? She signed the form, and she should be bound by it. Really? Even if she has no knowledge of what she owns or what she's entitled to, that's a valid waiver in your view? In my view, the claimant in that circumstance would not be able to satisfy their burden of proof because they signed. And that's where the Collins line of cases comes in to say, if you sign under duress, that doesn't qualify. But we're not in that circumstance here. So you're not, even though there was some evidence in the record that there was a perfunctory, at best, kind of exposure to the form, and here, you know, just sign it, here we are in the bank where one might not be surprised at being asked to sign forms. But you're not relying on the circumstances of the execution. Is that right, just entirely on the text of the form? In this particular case, we are relying on the circumstances of the execution because the form was not adequate. I only stated that in response to Judge Plager's question under the hypothesis that the form were more clear. In those circumstances, I think the personal circumstances of Mrs. Braza become much less significant and would require duress, fraud, coercion. Okay, so if I understand correctly, your position is the government wins if the form is a good form or if the person understood what the rights were apart from the form. The claimant wins if, I'm sorry, can you say that one more time? If I understand correctly, you're saying the government can win in one of two ways. Either the form is a good form and it's clear about what she's giving up, and you've drafted a form which you say does that, or if the government can show that despite the fact that it was a bad form, the claimant understood what the rights were, in fact. And understood the consequence of the waiver. Yes, I agree with that. I just would like to make one final point. Would it matter if she doesn't speak English and the form is in English? I don't think that would change my answer. Really? That's not the case. That's not the case because the testimony is she's spoken. I just wonder how far this form of yours will carry you. Okay. Okay. I would like to just close by saying if you compare the form on page 183 that Mr. Braza signed with the form on 181 that Mrs. Braza signed, there are two facts on Mr. Braza's form that are not on Mrs. Braza's form, and this was adopted pursuant to the Spouse Equity Act. It is intended to protect Mrs. Braza. Mrs. Braza has not been protected by signing this form. Thank you. Okay. Thank you, Mr. President. Ms. Stern. Good afternoon, Your Honors. May it please the Court. I would like to pick up where the discussion left off. This is not a great form, right? I think the form is a great form. That's exactly where I was going to begin. I hope you have corrected it. This is not a great form. Well, actually, there are two forms that Ms. Braza signed, and I think maybe that's been a little bit overlooked. The first form, which is in the appendix at page 181, contains a section that is entitled General Information, and that's in the middle of the form right under the notary. And the general information notifies her as follows. Public Law 98-615 requires that a retiring married employee whose annuity begins on or after May 7, 1985, must elect to provide a full survivor annuity for a current spouse unless the current spouse consents to some other election. Must elect? Must. Elect? Must elect to provide. So in other words, She doesn't have to elect to provide for the spouse. The statute does that. The statute does do that, but it does notify. Isn't it correct that under the statute, she is by law entitled to it unless she waives it? That's correct, Your Honor. But this does tell her two things. It tells her she must elect. Go ahead. It tells her that she will get it unless she consents to the waiver of it. That's what it tells her. It says that she will get a full survivor annuity unless she consents to some other election. Well, I'm not sure that it really says that. It says that the employee has to elect a full survivor annuity. It's not quite the same thing as saying that she gets it regardless of what her spouse does. Well, it gives her the sights of the public law that provides it, and it says that she can look it up, right? Do they attach the public law to the form so she doesn't have to go to the library or hire a lawyer? I don't think there's an attachment to the form of the public law, Your Honor. Oh, that's a pity. Okay. But it does tell her that unless she does something, unless she consents to something by signing this form, she will get a full survivor annuity. I agree. It does use the language that her spouse must elect, but it tells her she'll get it unless she signs it away. Well, it's checked, talks about insurable interests. Now, how do we expect that every member of the public knows what insurable interest is? Well, he checked where it says no regular or insurable interest survivor annuity. Or knows the regular interest or knows what that means? Well, if a person doesn't understand independently what they subjectively understand, then they can, of course, seek to obtain that knowledge. But if the information is on there, they are charged with the knowledge of what they are signing. But if they're told, here, sign this, trust me, I'm your husband, and so you sign, and it turns out that you have given away something that the statute entitles you to, unless you sign, at what point would the government recognize the possibility that something went wrong which is contrary to congressional intent? Well, the court recognizes four instances. Fraud, coercion, mental incompetence. There's no claim that she was coerced by her husband into signing this. If she made that claim and the facts supported it, that might invalidate her signature. You don't dispute, as a matter of fact, that she did not know what her rights were and that she had no understanding of what this form meant as a legal matter? You don't dispute that? Your Honor, I would submit there's no way for the government. It would be very, very difficult for the government to challenge the subjective knowledge or understanding inside a person's head who testifies, I didn't understand. Answer my question. Do you or do you not? We don't challenge that. You don't dispute the fact that she did not understand what her rights were under the law and she did not understand what this signing of this paper would do to her? We cannot dispute that. We cannot challenge that. Those are facts that are conclusive in this case. They are, but the facts also are. The government's position that even though she didn't understand what her rights were and even though she didn't understand what she was signing, she nevertheless made a knowing waiver of a statutory right. Yes, because the knowing is a constructive knowledge that is imputed to her when the information is on the form and she signs the form. And again, there were two forms that she signed. Where does that come from? That's the law of this Court. The law of this Court is that when you sign an election of rights, merely because you didn't take the time to seek information that would explain it to you more fully or if you made an inadvertent error because you didn't read it fully enough. Are you saying we've already decided this case? Well, actually, I would say yes, Your Honor, that in Scalise, which was even unpublished. No, no, we can't have decided the case because we haven't passed on the adequacy of this form, right? Well, Scalise, I think, did use the same form. That's a non-prec opinion. It is, Your Honor. But the principle, then, in Collins, which is a published case, this Court has said that when a person signs a written election, they have to be charged with it. There has to be. Yeah, but they have to sign a form which provides adequate disclosure. Well, let me go back to the form. So you agree that the government loses if the form doesn't give adequate notice of what the rights are, don't you? I do agree with that, Your Honor. But there are two forms, again, that Ms. Braza signed. The first one, which I pointed out, at A181. The second one, at 184, she signed also before the notary, has two statements. The first one repeats, I am freely consented to the survivor annuity election described on the attached form, which is the one that we just finished looking at. The second one says, I understand it's two parts. Well, it has an initial part and then a because part, and I want to focus on the because. But the whole statement says, I understand that I will be ineligible to continue coverage under the Federal Employees' Health Benefits Program if my spouse dies because I have consented to his slash her election to provide no survivor annuity. It is very clear. Ms. Braza signed a statement that says, I have consented to my spouse's, his election, to provide no survivor annuity. No, but that sentence really, until you get to the end of it, is talking about health benefits. It is, Your Honor. But the whole sentence does include the phrase, I have consented to his provision of no survivor annuity. Carefully crafted to give no information. Well, Your Honor, I believe when the two forms that she signed, both before a notary and all of the information on both forms, on each form there are two separate places where it advises her she is signing, I have a question for you. consenting to something. Yes. In your brief on page 12, you make the following statement. In this case, where there is no dispute that Ms. Braza and her husband signed the form in the presence of a notary public, there can be no question that she waived her right to a survivor annuity. I don't believe that. Let me reread it the way it should read. It should read, in this case where there is no dispute that Ms. Braza and her husband signed the form in the presence of a notary public, there can be no question that she signed the form. That's the way that sentence should read. She did sign the form, but that has almost no connection with whether she knowingly waived her right. Assuming I disagree with that sentence, what's your fallback position? Do you have any other defense to the government's position other than that the form is conclusive? The form is conclusive. That really is that, Your Honor. That's it. That's your case. And that has been the holding of other cases, both in this Court and in the MSPB, not this exact form. There are two parts to that. One, the form is conclusive and the form gives adequate notice. Yes, that's true. So what's the difference between this form and the new one? How does the new one give more information to the claimant? Your Honor, I have to confess, I was not aware that OPM had come out with a new form, and so it's not part of the record below, clearly. I'm not familiar with it, so I can only really speak to the information that's in this form, the two forms, actually. So you can't tell us why OPM has modified the form? I really don't know, Your Honor, and it wouldn't be part of the record below. Is it a consequence of our holding that the form is inadequate? In other words, how many people are there out there who might claim that they hadn't waived the annuity? Are we talking about thousands, hundreds of thousands? I really have no idea. I would be speculating. I would speculate that it would be in the thousands, but I really have no way of knowing. That wouldn't affect your response, though, if, in fact, you had a sense that there was some merit to the position. Absolutely, Your Honor. Without our deciding whether it was inadequate, the fact that it was modified by OPM suggests that somebody thought it could be clearer. Well, I have absolutely no idea what the modification was, and I don't know the reason for the modification, so there's really nothing that I can say that I can't concede that that sheds light on, some inadequacy in this form or not. This form, however, I believe is adequate. The two forms have substantial information that puts the signer on notice that they are consenting to no survivor annuity. I think it might be useful if both sides were to submit a post-argument letter with the new form and whatever comments they have on it. I'm sorry. Post-commenting on the new form? On the new OPM form. Giving us the new OPM form and any comments that you have on it. We'd be happy to do that. Or whatever accompanying noticing comment or whatever else accompanied it in terms of the reasons now. We'd be happy to do that, of course, Your Honor. Is a week too short? Ten days? I'm sure ten days would be fine. Ten days? It would be helpful if you could exchange your documents, perhaps with each other, before you send them to us, so if you want to criticize or endorse or whatever, and then what we will get will be something from each of you, perhaps if you could exchange documents in ten days and file them with us within two days thereafter so that we'll have whatever it is you want to tell us about the effect of the new form on these relationships we've been debating. That would be fine, Your Honor. Yeah, maybe five pages each so we don't get 55 pages each. Five or six pages. We don't want you to not tell us things that you've discovered that we really need to know, but we have in mind something short. If we need to know more, we'll decide whether we need to know more. That would be fine, Your Honor. Could I request that we be given maybe five days after the exchange because I do need to consult with OPM and sometimes, especially at this time of the year, it's hard to get ahold of people. That's fine. That's great. We'll be happy to do that, Your Honor. So ten days, I guess ten calendar days from now, and then five more calendar days without looking to see if there are weekends. If it's unduly burdensome, let us know. Very good, Your Honor. Well, I see I only have about three minutes left, and so I think that if there are questions about the other argument that was raised by Ms. Roza in her brief but not addressed here at oral argument, which had to do with the use of the word consent rather than waiver. If the Court doesn't have questions, we have explained in our brief that the use of the word consent to the waiver is basically the same as waiver, that the statute itself uses those terms interchangeably, that the legislative history makes very clear that the Congress meant for spousal consent to the waiver to be the equivalent of jointly waiving. And we cited in our brief some legislative history, but I want to leave the Court with a little additional legislative history. It comes out of the same House report that the Merit System Protection Board cited in its decision. So the cite is there in the Board's decision, but I want to point the Court specifically to the language by Congress in its summary of the legislation that required this spousal waiver, joint waiver. The Congress said in its summary, upon retirement an employee or member may not waive a survivor benefit for a current spouse unless the current spouse consents to that waiver. So we would submit that the issue raised in the brief by Ms. Brazo, that there's some distinction between consent and waiver. We don't need to edit the form in any event. I do have one question for you. Thank you. And that is if we were to conclude that Ms. Brazo is entitled to her survivor annuity had because she didn't make a knowing waiver, however, hypothetically, if you understand. If we were to conclude that, would the government have a cause of action against his estate to recover the difference in the amount that he received during his retirement years, which I think were relatively small, limited number in this case. Yes, it was a short number of years. And what he would have gotten had he taken the reduced annuity absent a waiver by her. How would that work? Have you thought about that? I had not thought about it. My instinctive reaction is that the answer would be yes. Would the government be able to go against her retirement, her survivor annuity, and make deductions from that to recompense the government for the difference that they overpaid him? Or would that be true only if she were his heir, the heir of his estate? Have you thought about that problem? Again, I haven't thought about it. I suspect that it would be the latter, true only if she was the sole heir. I'm certainly not an expert in inheritance laws, but that's what I would suspect. But it is true that the government presumably would have a cause of action against his estate to recover the overpayment. I would presume that would be correct. That might require a showing of fraud. Those are interesting questions. Those are. And I don't have the answers to them. Okay. Thank you. Unlike the Wood line of cases in which part of the concern was that the government was keeping the money, it had charged them but was not made good. Yes, this is a case in which Mr. Braza got the full benefit because there was no reduced annuity. Thank you, Your Honor. Thank you, Mr. Franco. We have a little time. I just have a few points to make in rebuttal. First of all, we obviously are happy to submit the follow-up information about the new form. I would note that the form can be found at the government's OPM's website, www.opm.gov/.form, and then you click. It's a standard form of the government, and so it's found at standard form 2801-2, and it is something that the court can certainly take judicial notice of, despite the fact that it's not in the record. Judge Plager, you had— Do you know whether there was a statement by OPM as to why they were adopting the new form? I do not know the answer to that question. I have seen a statement by OPM that they adopted that supplemental form that Ms. Stern kept referring to because it was not clear. They said our forms were not clear enough and did not tell an employee or a spouse that they would lose their health benefits if they signed this form. That's why that supplemental form came along. I guess you can tell us about whatever they said when you do your supplemental form. Yes. I don't know. You don't know if it was done by notice and rulemaking? I don't know. You don't know. Okay. One point I would like to make is that in the Collins case where the court held that there was unmistakable notice, in that case there was, in fact, an attachment, as suggested, might have been done in this case that made clear what the law is, and I'll refer to you. The instructions to the signatory said, your decision about making this deposit may affect your rights under the Civil Service Retirement System. Please read the attached information for employee or survivor carefully to be sure you understand the consequences of not making the deposit for military service. Finally, I'd like to conclude by saying the government has agreed that the OPM form must notify Mrs. Braza of her right. It is uncontested that Mrs. Braza did not otherwise know of her right, and it's uncontested that she is entitled to a survivor annuity. Absent a waiver. Absent a waiver, and we have findings that there was no waiver in this case. Administrative Judge Cook found, and the finding was unchallenged by the government, that Mrs. Braza did not intentionally and knowingly waive a right to a survivor annuity. Thank you. Is there a limitations period on when you can claim the annuity? How does that work? There must be some sort of limitations period. I'm sorry. I don't know the answer to that. That would be interesting to know. Maybe you can put that in your supplemental filing. This was a fairly prompt claim, though, was it not? I don't think there's any issue of limitations here. I'm just wondering how far this could reach back. I see. There's a problem of administrative convenience. The OPM needs to be able to rely on the documents it has unless there's some compelling reason to have those documents subject to challenge, and this may be an example of that case, or it may not. But I think it's an interesting question as to whether there is a time after which, even under compelling circumstances, it's too late to challenge the decision. I do know that a claimant has 60 days after a denial by OPM to appeal to the MSPB, but I don't know how long a claimant has after their spouse dies to request the annuity. We can put that in our follow-up papers. Thank you, Your Honors. Thank you. Thank you, Mr. Franco and Mr. Nguyen. The case is taken under submission.